IDA CROUCH, Appellee, v. CHARLES B. CROUCH, Appellant.

No. 41126.

NOVEMBER 24, 1931.

George J. Dugan and Blake Willis, for appellant.

C. J. Cedarquist and Baker, Doran & Boone, for appellee.

ALBERT, J.—The parties to this action were married on the 13th day of March, 1918. They went to live on a farm owned by defendant's father about four and one-half miles south of Woodward, Iowa, where they lived for a period of two years as renters. In the spring of 1920, they purchased a 50-acre tract of land near Woodward. Later they purchased a five-acre tract, and later a 108-acre tract, making 163 acres in the entire farm, where they lived until the time of this lawsuit. Three children, boys, were born to them, aged at the time of the trial respectively about 10, 8 and 5 years.

The basis of the plaintiff's petition on which she claims a divorce is cruel and inhuman treatment. She asks for the custody of the minor children, division of the property, suit money and alimony. On the answer of the defendant, denying all of the allegations of plaintiff's petition and pleading condonation, the case was tried.

No useful purpose would be attained by setting out the evidence in this class of cases. The general trend of the testimony in such cases is similar, the facts of no two cases are identical, and each case must depend upon its own facts. We refrain from entering into a detailed discussion of the facts in so far as the divorce is concerned, but content ourselves with saying that from the evidence in the case, the district court reached the proper conclusion as to the merits of the divorce controversy, and his action in holding that the plaintiff was entitled to a divorce has our approval, and we agree with the district court that the custody of these minor children should be granted to the mother.

462

The real, troublesome question in the case is the question of alimony.

At the time of the marriage, plaintiff was possessed of nothing in her own right, and defendant states he had a line of farm machinery, enough to farm 120 acres. In October, 1919, he contracted to buy a 50-acre tract at $212.50 an acre, on which there was made a down payment of $500 out of the funds which they had accumulated. Shortly after this, plaintiff, by reason of the death of her father, became possessed of an interest in his estate, part of which was in cash, part an interest in land, and telephone and bank stock. She disposed of her interest in the land, the telephone and bank stocks, and the net receipt from her interest in her father's estate amounted to about $9,500.00. Part of this inheritance she invested in household furniture and fixtures. Later the five-acre tract was purchased, adjoining the 50-acre tract, for $250, and still later 108 acres were bought for $7,000.00. On this latter tract $1100.00 was paid down and a mortgage given back for $5,900.00. From the funds received from the father's estate, it is undisputed that $7,500.00 was paid on the purchase of land, the title to which was taken by the defendant. Plaintiff also paid from her inheritance some outstanding indebtedness of the defendant's which was in existence at the time of the marriage. She claims and the defendant does not deny, that the total amount of her inheritance was $9,575.00, and from this amount there was expended for investments in land, household goods and other personal property and for the payment of defendant's outstanding notes, the sum of $9,257.00. So far as we are able to determine from the record and under defendant's testimony, the farm machinery, grain, hay and live stock were of the reasonable value of $2,535.00. The floating indebtedness is shown to be about $950.00. The testimony shows that the 55 acres cost $10,875.00 and the 108 acres $7,020.00. Disinterested witnesses now place the value of the land as follows: the 55-acre tract is worth $8,250.00 and the 108-acre tract about $5,500.00.

The decree of the court in respect to these matters in substance was that the 55-acre tract was given absolutely to the plaintiff, but she was charged with the payment of $900 on the $5,900.00 mortgage, and later, that the defendant was to keep title to the 108 acres, but provided he should pay $5,000.00 of

the $5,900.00 mortgage. Each party was to pay the taxes due and payable for the year 1931 on their respective tracts of land thereby awarded, and each party was to pay his proportionate share of the interest due on the $5,900.00 mortgage. The defendant was given all of the farm machinery, two-thirds of the oats, corn, and hay, and all of the wheat. Defendant was to pay a floating indebtedness of $951.35, and all of the costs of the action, including $150 additional attorneys' fee. The household goods and furniture were divided, the larger share going to the plaintiff. She was given 50 chickens, 14 hogs, 3 cows, in addition to two which she had in her possession, two head of horses, 1 heifer, 2 calves, 150 bushels of corn, 7 tons of hay, 150 bushels of oats, 24 cans of fruit on the floor of the cave and half of the cans and jars of fruit on the shelves which were good, one-half of a large jar of pickles, one-half of the onions, and 1 small barrel of vinegar. In addition, defendant was required to contribute the sum of $30 a month for the maintenance, support and education of the three children. As to this part of the decree the defendant complains.

We have read and re-read this record and given it a great deal of consideration as to the correctness of the decree. From an equitable standpoint, we think, however, the decree of the court was right.

Defendant complains very bitterly, and probably justly contends, that under this division of the property it is hopeless for him to attempt to carry on his farming industry, or to in any way meet the burdens thus placed upon him. It is also probably true that the plaintiff will be unable to meet the obligations put upon her by the decree with reference to the 55 acres of land. In view of the present depression and the well-known depreciation of land values, these conditions may be true, but it is not within our power to protect these parties from the contingencies created by the decree. This case is still in the hands of the district court under the statute, and if foreclosure of the mortgage has been commenced, or there is other change in the conditions and there is a method by which the rights of the respective parties hereto may be protected and their interest in this property saved, if they can not stipulate in relation thereto, then on proper application to the district court and a presentation of a feasible plan by which their rights may be protected

464

and the property saved to them, such matter will receive due consideration by the court.—Affirmed.

FAVILLE, C. J., and EVANS, MORLING, KINDIG, and GRIMM, JJ., concur.